UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMIGRANT MORTGAGE COMPANY, INC. ) | |
| RETAINED REALTY, INC., ) | |
|    Plaintiffs ) | |
| vs. ) | CIVIL ACTION NO. |
| DONEYN BOURKE, ) | 1:21-cv-11133-NMG |
| WILLIAM HAYWARD, SR. ) | |
|    Defendants ) | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Doneyn Bourke and William Hayward, Sr., the Defendants in the above-captioned matter who respectfully submits their memorandum of law in support of their motion for summary judgment, pursuant to Rule 56 F.R.C.P. As grounds therefore they say that based on the undisputed material facts in this case they have proven that they are entitled to judgment on each of the counts in their counterclaim as well as on all the claims in the Plaintiff's complaint. The opposition to the Plaintiffs' motion for summary judgment that will be filed by Ms. Bourke and Mr. Hayward is incorporated herein by reference. [1]

### Introduction

Ms. Bourke's home is the subject of this lawsuit and the Plaintiffs' unlawful second bite at the apple in an illegal effort to gain legal possession of that property is their apparent motivation for bringing this case. The Plaintiff Retained Realty Inc. (RRI) previously brought the claim in summary process action it filed in a state court in Massachusetts, namely, the Nantucket District Court. After judgment initially entered for RRI, the Appellate Division of the District Court reversed the trial court's judgment and awarded possession of the property to the Defendants Doneyn Bourke and William Hayward. In accordance with the direction of the Appellate Division's decision, the Nantucket District Court entered a final judgment under Rule 58 M.R.C.P. granting possession of the property to Ms. Bourke and Mr. Harward and dismissing RRI's claim for possession. This decision was based on the finding that the "FORECLOSURE

---

1    Mr. Hayward is Ms. Bourke's father and he does not live in this property.

1

DEED" (See Exhibit C (Docket No. 1-1) attached to Plaintiffs' Complaint), by which Emigrant Mortgage Company (Emigrant) erroneously attempted to convey its interest in the legal title to the property to RRI. [2]

Undeterred by their loss in the State Court, Emigrant and RRI are now seeking this Federal Court for a do over hoping to get a better result. They are now relying on a certificate of entry which is at best wrong, if not in fact fraudulent. This second action is composed of facts which are not true, and legal theories that are directly contrary to Massachusetts law. To this point is the Plaintiffs focus on the erroneous proposition that the certification language contained in the RRI certificate of title does not mean what it actually says:

> And it is further certified that said land is under the operation and provisions of Chapter 185 of the General Laws, and that the title of said
> **RETAINED REALTY, Inc.**
> to said land is registered under said Chapter subject, however, to any of the encumbrances mentioned in section forty-six of said chapter, which may be subsisting, and subject also as aforesaid.

Not to be outdone by one erroneous idea, RRI also proposes that the final judgment entered in the Nantucket District Court summary process case doesn't mean anything so it is free to bring this action a second time, even though the underlying facts have not changed. At the motion to dismiss stage of this case this court was willing to tolerate Plaintiffs' forum shopping. This motion for summary judgment is intended to bring that to an end.

### Statement of the Case

The Plaintiffs' complaint seeks a retrial of the legal title issue raised and fully litigated in the state court summary process case heard Nantucket District Court, wherein it claimed that it had a superior interest in the legal title and to possession of the property owned by Ms. Bourke and her father. The property is registered land and under M.G.L. Ch. 185 the legal title to it is

---

[2] It is unclear what role Emigrant plays in this case as a party plaintiff. To the extent Emigrant had any interest in the legal title to Ms. Bourke's home it was terminated by operation of law on December 14, 2012 when the Massachusetts Land Court cancelled Ms. Bourke and Mr. Hayward's Certificate of Title, No. 22157 after the foreclosure deed was registered. Emigrant does not appear on the RRI transfer Certificate of title No. 24553 except as the grantor in the foreclosure deed.

governed by the current Certificate of Title issued by the Massachusetts Land Court. Only documents specifically noted on a Certificate of Title affect the legal title to registered land. See M.G.L. c. 185, §46. Under §57 registration of a deed on the certificate is the act which transfers the legal interest in the property.

Ms. Bourke and Mr. Hayward purchased her home and were issued a Transfer Certificate of Title on March 6, 2006, (Bourke COT), Exhibit A). The Bourke COT lists a mortgage being granted to Emigrant as an encumbrance on April 17, 2008. After the discharges of prior mortgages were noted, the Emigrant mortgage was promoted to first position.

On October 30, 2009 an ORDER OF NOTICE was noted on the Bourke COT, Exhibit A. It was followed on December 8, 2009 by a Complaint (SCRA) being noted on the Bourke COT, Exhibit A. A Power of attorney was the next item noted on the certificate on December 14, 2009, Exhibit A. Immediately after that a Certificate of Entry was noted on the Bourke COT, Exhibit A. The next and last item note on the Bourke COT is the Foreclosure Deed which is at the heart of this case, Exhibit A. By operation of law the foreclosure deed terminated or discharged everything noted on the Bourke COT after April 17, 2008. As a result the Bourke COT was cancelled by the Land Court on December 14, 2009. Title was immediately transferred to RRI and a new certificate of title was issued certifying RRI's title interest, (RRI COT, Exhibit B). Emigrant's Certificate of Entry is not noted on the RRI COT because it was terminated when the foreclosure deed was registered. [3]

---

3   Registering the Foreclosure Deed immediately after Certificate of Entry is simply a waste of money as the entry lasted for less than a minute. When the Foreclosure Deed was recorded Emigrant transferred any and all of the interest it held in the legal title to the property. This would be true even if the property was not registered land. This point is emphasized by the fact that this property is registered land. In this case, as in every other case where a foreclosure deed is registered or recorded, the grantee named in the foreclosure deed does not acquire any interest or right in the entry made by the foreclosing mortgagee. The grantee is now the fee simple owner of the property.

Claiming to be the owner of the property by virtue of the foreclosure deed, RRI filed a summary process complaint in the Nantucket District Court on March 18, 2013 which named Ms. Bourke and Mr. Hayward as defendants. After a two day trial judgment for possession entered on November 28, 2017 for RRI. Ms. Bourke and Mr. Hayward brought an appeal from that judgment to the Appellate Division of the District Court. On December 23, 2019 the Appellate Division issued its Decision and Order reversing the trial court judgment. In its ruling the Appellate division held:

> The auctioneer testified that Emigrant was the winning bidder and that he completed a memorandum of sale to that effect. No assignment of the winning bid from Emigrant to RRI was ever registered and recorded as required by Land Court Guideline No. 41. The memorandum of sale dated March 21, 2011 does not include any assignment language. The affidavit filed with the foreclosure deed from Emigrant to RRI and dated July 12, 2011 avers that RRI was the high bidder in the foreclosure auction. That affidavit is clearly erroneous, and was found to be so by the trial judge. . . .
>
> Even if the defective foreclosure deed that Emigrant provided to RRI may have operated to assign the mortgage to RRI, 8 the foreclosure deed could not convey the right to commence summary process because the equity of redemption had not been extinguished. See *Santiago v. Balboa Mgt., Inc.,* 77 Mass. App. Ct. 46 (2010). Therefore, neither Emigrant nor RRI had standing to obtain summary process.
>
> By the time of the trial, four and a half years had passed since the recording of the certificate of entry, past the time for the equity of redemption to have been extinguished. However, summary process is purely a statutory procedure and can be maintained only in the instances specifically provided for in the statute. See E.G. Daher & H. Chopp, Landlord and Tenant Law§ 16.30, at 337 (3d ed. 2000). The Supreme Judicial Court has emphasized the strict construction of the summary process statute in *Rental Prop. Mgt. Servs. v. Hatcher,* 4 79 Mass. 542 (2018). "And where the plaintiff lacks standing to bring an action, the court lacks jurisdiction of the subject matter and must therefore dismiss the action." *Id.* at 546-54 7. Where the complaint is dismissed for lack of subject matter jurisdiction, the plaintiff cannot file a new summary process complaint against the tenant unless it subsequently becomes the owner or lessor of the property. *Id.* at 547. RRI lacked standing to obtain summary process against B & H at the time it filed this action, and the passage of time did not cure its failure to be in strict compliance with the requirements of G.L. c. 239. (Exhibit F (Docket No. 1-1) attached to the Plaintiffs' Complaint.)

The case was returned to the Nantucket District where a final judgment under Rule 58 M.R.C.P. entered on January 7, 2020 with the court holding, "IT IS ORDERED AND ADJUDGED by the Court (Hon. Thomas S Barrett) that judgment enter in favor of the

Defendant(s) named above for possession of the subject premises shown above, that the Plaintiff(s) named above take nothing for rent, use and occupation, and that the Defendant(s) recover of the Plaintiff(s) his(her)(their) costs pursuant to law." RRI did not take an appeal from that decision.

The next action taken by RRI or Emigrant regarding Ms. Bourke, Mr. Hayward, the mortgage, or possession of the property was the filing of the complaint in this case. That action was taken in spite of the fact that both RRI and Emigrant had not completed a valid foreclosure of the mortgage and that RRI had no interest in the legal title to Ms. Bourke's home and that a court had entered a final judgment determining the right to possession belonged to Ms. Bourke and Mr. Hayward. As a result they filed the counterclaims that are presented in this case.

## Standard for Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.C.P. 56(c). Not every factual "controversy" bars a litigant's access to the Rule 56. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 2510, 91 L.Ed.2d 202 (1986); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A "genuine" issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, *Mack v. Great Atlantic and Pacific Tea Co.*, 871

F.2d 179, 181 (1st Cir.1989), would permit a rational factfinder to resolve the issue in favor of either party. See *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Hahn,* 523 F.2d at 464.

The test for summary judgment is steeped in reality. Although the remedy must be withheld if material facts are authentically disputed, there is a burden of production: the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We have interpreted Rule 56 to mean that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir.1989)*, see also *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1106 (1st Cir.1989). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. See *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109-10 (1st Cir.1988).

### Plaintiffs' Lack of Standing

In order to bring this case the plaintiff must plead facts from which the court can determine that RRI has sufficient standing that would entitle it to a judgment. It is undisputed here that the Nantucket District Court ruled that neither Emigrant nor RRI had standing to bring a summary process action against Ms. Bourke or Mr. Hayward and that the purported foreclosure that RRI relied on was invalid. RRI did not appeal that decision and it took no further action with regard to the underlying mortgage, foreclosure of that mortgage, or to acquire an interest in the legal title to Ms. Bourke's home. In short, facts in this case are exactly the same as were present in the

6

summary process action. Since nothing has changed since the prior judgment entered, the Plaintiffs standing to bring this case is the same as the court found in the prior litigation, namely, non-existent.

The Plaintiffs' claim to have standing runs afoul of the doctrine of judicial estoppel. The complaint states, "41. Although Emigrant's foreclosure under the power of sale was void, the Foreclosure Deed is sufficient to convey Emigrant's full fee interest in the Property to RRI once Emigrant's title accrued on December 14, 2015 upon the termination of the Defendants' equity of redemption." (Docket No. 1 ¶ 7), (Docket No. 1-1 p. 33) The summary process complaint was brought by RRI on the belief that the foreclosure deed had transferred title to RRI. It is undisputed that the summary process complaint states: "You are summonsed to appear at a hearing … to defend against the complaint of PLAINTIFF / LANDLORD / OWNER: Retained Realty, Inc." In direct contradiction to that averment, however, they now suggest that title somehow passed to Emigrant by means of the Emigrant's entry, even though registering the Foreclosure Deed cancelled the Certificate of Entry. Asserting an allegation that the title passed by way of the Emigrant's entry is not only false, it is barred by judicial estoppel.

### **Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Consequently, a plaintiff who seeks to bring its suit in a federal forum bears the burden of establishing that the federal court has subject-matter jurisdiction. See *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017); *Klimowicz v. Deutsche Bank Nat'l Trust Co.,* 907 F.3d 61, 64 (1st Cir. 2018).

In order to have this court hear this case the Plaintiffs must establish that this court has subject matter jurisdiction to hear the claims being advance by the complaint. A complaint that seeks some relief involving registered land is within the original and exclusive jurisdiction of the

7

Massachusetts Land Court. M.G.L. Ch. 185 §1(a1/2). There is no legal or equitable basis for this court to entertain this action in violation of the mandate of Ch. 185. This court does not have subject matter jurisdiction to alter, amend, or cancel a certificate of title issued by the Land Court. Any judgment issued by this court which touches on the legal title to the real estate involved here would be void and it would not to be recognized by the Land Court.

Legal title to registered land is purely a matter of state law. There is no Federal interest involved with registered land and obviously no federal law covering registered land. Litigation involving registered land is limited by statute to the Land Court. Federal courts do not have concurrent jurisdiction with the Land Court to hear any such claim. [4]

## Constitutional Violation

As registered land Ms. Bourke's home enjoys the benefits and rights conferred by M.G.L. Ch. 185. Bringing this case in the District Court is a direct attack to have Ms. Bourke and Mr. Hayward's rights conferred by Massachusetts Law. The Plaintiffs do not challenge the validity of the land registration system or the process by which the Land Court handles registered land claims; they simply do not want to bring the case in the Land Court because they know in advance what their fate would be; a quick loss. If this court were to allow the Plaintiffs to pursue these claims in this court it would be violating Ms. Bourke's and Mr. Hayward's rights and privileges under Massachusetts law.

## *Rooker-Feldman* Doctrine Divests Court of Jurisdiction

The *Rooker-Feldman* doctrine preserves the Supreme Court's exclusive jurisdiction over "appeals from final state-court judgments," *Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) by divesting lower federal courts of jurisdiction to hear certain cases

---

4    The Plaintiffs suggest that once they establish diversity jurisdiction the District Court can then usurp the exclusive jurisdiction of the Land Court to hear registered land cases.

brought by parties who have lost in state court. *Klimowicz v. Deutsche Bank Nat'l Trust Co.,* 907 F.3d 61, 64 (1st Cir. 2018) citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-93, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). [5]

When final judgment entered in the summary process action awarding possession of the property to Ms. Bourke and Mr. Hayward all of the issues arising out of it, specifically including the legal title to Ms. Bourke's home were resolved. Since RRI did not take an appeal from that final judgment it has no standing to bring a claim asserting a title interest in the property in this court. *Klimowicz*, supra at 65. To be sure, RRI could have pursued an appeal of the Nantucket District Court's final judgment, but chose not to. *Klimowicz* supra at 66 citing *Federación de Maestros de P.R.*, 410 F.3d at 24 ("if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended").

A second outcome facing RRI under *Rooker-Feldman* is that as a result of registering the foreclosure deed on the Bourke COT the Land Court cancelled it and issued the new RRI COT. The content of the RRI COT could have been challenged by RRI under M.G.L. Ch. 185 § 114. Since there was no action taken by RRI, the Certificate was finalized on the date it was issued. As with any certificate of title issued by the Land Court, the RRI Certificate is a final judgment of the Land Court. [6]

---

5  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-416 (1923). *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

6  The Plaintiffs complaint contains specific allegations that it knows are false or wrong as a matter of law:

42. Accordingly, RRI is entitled to a Judgment declaring that it is the true and lawful owner of the Property by virtue of Emigrant's foreclosure by entry and possession.

51. As such, RRI is entitled to a Judgment for Possession of the Property.

59. The total use and occupancy payments owed to RRI from March 21, 2011 through July of 2021 is $375,000.00.

RRI cannot escape the *Rooker-Feldman* bar through the simple expedient of introducing a new legal theory in the federal forum that was not broached in the state courts. See *Miller v. Nichols*, 586 F.3d 53, 59 n.2 (1st Cir. 2009) (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)). In the complaint two separate propositions are put forth that violate the *Rooker-Feldman* prohibition. All three counts are a blatant attempt to avoid the summary process judgment which found the foreclosure deed was void and RRI had no interest in the legal title to Ms. Bourke's home. Count One is nothing less than a brazen attempt to revive the Bourke Certificate which was cancelled by the Land Court.

A federal court's application of the *Rooker-Feldman* doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit. See *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 (1st Cir. 2004). Instead, the critical datum is whether the plaintiff's federal suit is in effect, an end-run around a final state-court judgment. See *Federación de Maestros de P.R.*, 410 F.3d at 24 ("a federal suit seeking an opposite result [from a final state court judgment] is an impermissible attempt to appeal the state judgment to the lower federal courts"). 'Because the plaintiff's federal suit seeks to invalidate the antecedent state courts' judgments, the district court lacked jurisdiction to consider her newly minted legal theories. *Klimowicz* supra at 66-67; *Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47 (1st Cir. 2019). [7]

---

60. RRI is entitled to a Judgment for past due use and occupancy payments in the amount of $375,000.00 plus any additional payments that come due prior to the entry of Judgment in the instant action.

7  The complaint also falsely asserts:

59. The total use and occupancy payments owed to RRI from March 21, 2011 through July of 2021 is $375,000.00.

The Plaintiffs attempt here to undo the prior state-court rulings is precisely the sort of "end-run around a final state-court judgment" that the Rooker-Feldman doctrine proscribes. *Efreom v. McKee* 46 F.4th 9, 18 (1st Cir. 2022), citing *Klimowicz* supra at 66. The Nantucket District Court found that Ms. Bourke and Mr. Hayward were in lawful possession of the property and that RRI did not have a legal or possessory interest in the property. Disappointed by that judgment the Plaintiffs filed this action with actual knowledge they are attempting an end run around the Nantucket District Court's final judgment and the issuance of the RRI Certificate by the Land Court. This action is what gives rise to the counterclaims advanced by Ms. Bourke and Mr. Hayward.

## **Res Judicata**

Underlying the entirety of the Plaintiffs complaint is the magic thinking idea that a certificate of entry which has been cancelled by the Land Court can somehow be resurrected simply by saying so. If the Plaintiffs were to advance such a specious claim in the Land Court it would likely form the basis for a motion for sanctions. Massachusetts law has always been clear that if a foreclosure deed is registered or recorded before three years have passed since the certificate of entry was registered or recorded, the entry is terminated. *HSBC Bank USA, N.A. v. Morris*, 99 Mass.App.Ct. 417, 422 (2020) citing, *Bevilacqua v. Rodriguez*, 460 Mass. 762, 775 (2011), quoting *Santiago v. Alba Mgt., Inc.*, 77 Mass. App. Ct. 46, 50 (2010) (upon foreclosure, "the former mortgagee owns the legal and equitable interest in the property and the mortgage no longer exists"). This is not some convoluted legal theory, but rather a combination of law and

---

60. RRI is entitled to a Judgment for past due use and occupancy payments in the amount of $375,000.00 plus any additional payments that come due prior to the entry of Judgment in the instant action.

logic. If it were otherwise there would be two legal titles for the same parcel of land; one held by the mortgagee through the entry, and a second held by the grantee named in the foreclosure deed.

In this case Plaintiffs magical thinking is more pronounced; the RRI COT does not list the Emigrant entry as an encumbrance. If it is not listed on the certificate of title it simply does not exist. M.G.L. Ch. 185 § 46. Obviously this case was not filed in the Land Court because the Plaintiffs hope to have this court accept their magical thinking.

Even if the Plaintiffs could magically conjure life into the cancelled certificate of entry, they face a substantial factual problem that would end the life of the certificate for a second time; the facts stated in it are not accurate and likely knowingly false.

There is ample proof that shows the entry did not occur at the time or manner described in the certificate of entry.

According to the trial testimony of Martin Bourke, he was at the premises prior to the time of the scheduled foreclosure and long after the scheduled foreclosure time had come and past, and no one appeared at the property, not Dalton Frazier, the claimed auctioneer and mortgagee's agent, nor any one else, including neither of the named witnesses Kathryn Kiernan and Joshua Field, nor the named notary public Lauryn Fields a/k/a Lauryn Suyematsu. (See Statement of Facts Nos. 5-25.)

The fraudulent nature of the Certificate of Entry can be gleaned by Lauryn Field's jurat wherein she states that she knows Kathryn Kiernan personally and sufficiently well that she did not require Ms. Kieran to provide her with identification, and yet she stated at her deposition that Ms. Field has no memory of Kathryn Kiernan, does not recall even her name, does not know where Ms. Kiernan lives, does not know what she looks like, and had no memory as to whether Ms. Kiernan ever signed the document or when she might have done so. (See Statement of Fact

Nos. 13 & 17.) As for Kathryn Kiernan, she stated that Ms. Field is not an acquaintance of hers, and she did not know who she was. (See SOF No. 14.)

As for the other witness, Joshua Field, he does not know Ms. Kiernan. She certainly was not his friend. He also does not know who Dalton Frazier is, and does not know if he has ever met him. (See SOF 16, 19.)

There is no evidence that either Lauryn Field or Joshua Field ever travelled from their home in New Hampshire or their work to Nantucket on or about March 21, 2011. (See SOF Nos. 9, 20-23.) Lauryn Field's boss, Michael Harkins, testified that he had no knowledge of Ms. Field ever attending a foreclosure on Nantucket. (See SOF No. 24.) He went on to state that he had no knowledge that either Ms. Field or Mr. Field went to Nantucket on March 21, 2011, nor did he have any knowledge that anyone else from his business Harkins Real Estate, LLC, was present at the March 21, 2011 foreclosure. (See SOL No. 25.)

Making the Plaintiffs situation even more dire, however, is the fact that it already litigated the legal title to Ms. Bourke's home where that issue was put in question and challenged by Ms. Bourke and Mr. Hayward. They prevailed and RRI lost its claim that it held an interest in the legal title to the property. Despite this they have come to this court seeking to relitigate the very claims and theories it advanced in the summary process action. The earlier judgment is barred by the doctrine of res judicata. *Sheehan Const. Co. v. Dudley,* 299 Mass. 51, 53-54 (1937); *LaRace v. Wells Fargo Bank*, 99 Mass. App. Ct. 316, 322 (2021) citing *Duross v. Scudder Bay Capital, LLC*, 96 Mass. App. Ct. 833, 838 (2020). RRI lost its claim to be an owner of the property and it cannot relitigate that matter a second time in this court. In the complaint RRI's does not even attempt to disguise the fact that it is trying to relitigate the exact same claims and

13

issues which they previously lost in the prior proceeding; who has legal possession of the property.

## **Counterclaim Specific Arguments**

Ms. Bourke and Mr. Hayward have devoted the first portion of their memorandum to arguments that pertain to the reasons why these Plaintiffs should not have filed this litigation in the first place. Those reasons are so substantial that they in part create the factual basis for the three counts counterclaims put forward in this case.

## **Count One**
## **M.G.L. Ch. 93A**

The factual touchstone for this count is the Plaintiffs actual knowledge that the ludicrous idea Emigrant's entry onto the property was not terminated by the registration of the foreclosure deed. A reasonable person with actual knowledge and experience dealing with foreclosures and legal titles to real estate knows, without qualification, when Land Court cancels a certificate of title the interests shown on that certificate are also cancelled unless the Land Court carries them over to the new transfer certificate of title. This has always been the law in Massachusetts since the Land Registration system was established, a system that was determined to be constitutional. *Tyler v. Judges of Court of Registration*, 175 Mass. 71 (1900).

There is no dispute here that Emigrant and RRI are both sophisticated entities that are knowledgeable of real estate law and legal titles to real estate. Equally undisputed is the fact that both entities are actively involved in the area of real mortgage foreclosure as major players in that industry. It is also undisputed that both entities are represented in their business activities by attorneys who are licensed to practice law in Massachusetts law, and are especially knowledgeable about real estate and foreclosure law. Finally there is no dispute that both entities and their respective attorneys are Land Court procedures, registered land, and certificates of title.

In the course of their foreclosing of mortgages Emigrant and RRI are routinely involved with bringing summary process actions against mortgagors. For this they regularly engage Massachusetts attorneys who are well versed in summary process law and procedures. Those attorneys are certainly familiar what the judgments issued in those cases mean, and what they don't mean.

The complaint filed in this case is nothing more than a blatant attempt to steal the legal title to Ms. Bourke's home done with actual knowledge that a court has already determined that Ms. Bourke and Mr. Hayward are currently in legal possession of the property. They also know that the same judgment found RRI did not have any right to possession of the property or an interest in the legal title to the property. There can be no more compelling case for a finding that the Plaintiffs and their attorneys are engaged in an unfair and deceptive practice in violation of M.G.L. Ch. 93A §9. *Quinton v. Gavin*, 64 Mass.App.Ct. 792, 799 (2005).

In this case liability under the statute is found in the multiple misstatements of Massachusetts law stated in the complaint. This is compounded by the allegations that were known to be untrue. These things are per se unfair or deceptive acts under Ch. 93A. *Williams v. Perrault*, 82 Mass.App.Ct. 1117 (2012), citing *Reddish v. Bowen*, 66 Mass.App.Ct. 621, 626–629 (2006); *Mercado v. Manny's T.V. & Appliance, Inc.,* 77 Mass.App.Ct. 135, 136, 139–140 (2010); *Meyer v. Nantucket*, 78 Mass.App.Ct. 385, 395 (2010).

**Count Two**
**Abuse of Process**

To constitute a cause of action for abuse of process it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed. *Quaranto v. Silverman*, 345 Mass. 423, 426 (1963), quoting *Gabriel v. Borowy,* 324 Mass. 231, 236 (1949). The three

elements of the cause of action are that "process" was used, for an ulterior or illegitimate purpose, resulting in damage. *Gutierrez v. Massachusetts Bay Transp. Auth*., 437 Mass. 396, 407 (2002), quoting *Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 775- 776 (1986). To satisfy the ulterior purpose element, it is not enough to show "improper motive of vexation, harassment, or annoyance. Rather, the ulterior purpose must be to gain some collateral advantage." *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713-714 (2011); *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, (2010). This is exactly what Emigrant, RRI, and their attorneys have conspired to do; stealing her home. [8]

Emigrant and RRI were represented by counsel at all times since Emigrant filed the SCRA complaint in the Land Court. Counsel for RRI filed the summary process action in the Nantucket District Court and in the Appellate Division appeal. Counsel was aware that the final judgment entered in the summary process case on January 7, 2020 and that judgment awarded possession of the property to Ms. Bourke and Mr. Hayward. Counsel was also aware that the judgment found that RRI did not have any interest in the legal title to the property or right to possession.

At some point between January 7, 2020 and July 9, 2021 Emigrant and RRI instructed Doonan, Graves, and Longoria (DGL) to bring a new claim against Ms. Bourke and Mr. Hayward seeking to relitigate the same title and possession issues that were previously brought and lost in the Nantucket District Court case. When DGL filed the Verified Complaint it knew that the Nantucket District Court had issued a final Judgment awarding possession to Ms. Bourke and Mr. Hayward; finding that RRI had no interest in the legal title to Ms. Bourke's home or right to possession of it; and that the final judgment had not been appealed.

---

8    An abuse of process is also an element of intentional distress claim. *Mahlowitz*, id at 648.

When DGL filed this Verified Complaint it knew that the Certificate of Entry had been cancelled by the Land Court and that the Emigrant Certificate of Entry was not carried over to the RRI COT. DGL also knew that since this was registered land the Land Court had original and exclusive jurisdiction over the issues raised in the complaint by virtue of M.G.L. Ch. 185. At the time that Doonan, Graves, and Longoria filed this Verified Complaint on behalf of Emigrant and Retained Realty, it knew that Summary Process actions are governed by Massachusetts statutes, in particular, M.G.L.Ch. 239. When the Verified Complaint was filed DGL knew the Rooker-Feldman doctrine precluded this action as Federal Courts do not allow forum shopping a legal matter which had been lost in State court.

At the time that Doonan, Graves, and Longoria filed this Verified Complaint on behalf of Emigrant and RRI, it knew that the United States District Court of Massachusetts and the United States First Circuit Court of Appeals almost always rules in favor of a mortgage loan servicer and/or mortgage investor over against homeowners and borrowers. This action was filed in this court with the expectation that this court would almost certainly rule in favor of Emigrant and RRI and against the Defendants. This action was filed for the improper purpose of obtaining possession of the property from Ms. Bourke and Mr. Hayward and improperly establishing a legal title interest in their property in favor of RRI, in spite of the final judgment of the Nantucket District Court. The actions described above are an abuse of process that have injured Ms. Bourke and Mr. Hayward and which have caused them damages.

### Count Three
### Intentional Infliction of Emotional Distress

Ms. Bourke incorporate the facts and allegations set out above in lieu of repeating them. Those things were done intentionally and constitute the intentional infliction of emotional

distress. Those actions have also caused them harm and have entitled Ms. Bourke and Mr.. Hayward to recover damages from the defendants.

To prevail on a claim based on this tort, a plaintiff must establish (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.*, 371 Mass. 140 (1976). Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997).

A claim for the intentional infliction of emotional distress does not have to be based on conduct engaged in for the purpose of causing distress. It is often based on conduct on conduct which the actor should have known would result in distress. *Boyle v. Wenk*, 378 Mass. 592 (1979); *Brown v. Nutter, McClennen & Fish*, 45 Mass. App. Ct. 212, 213-214, 218-219 (1998); *Simon v. Solomon*, 385 Mass. 91, 95-98 (1982); *Bresnahan v. McAuliffe*, 47 Mass. App. Ct. 278, 283 (1999). The conduct of Emigrant, RRI, and their attorneys clearly meets or exceeds the standard for establishing a claim for the intentional infliction of emotional distress.

**Conclusion**

For all of the reasons set out above this court should enter judgment for Ms. Bourke and Mr. Hayward on each of the three counts in their counterclaim. In addition the court should enter judgment for them on each of the three counts set out in the complaint.

> Respectfully submitted,
>
> Defendants Doneyn Bourke and
> William Hayward, Sr.,
> By their attorney,
>
> */s/ Thomas B. Vawter*
> Thomas B. Vawter, BBO #544321
> Vawter Law, LLC
> P.O. Box 24
> Gloucester, MA 01931-0024
> 781-400-1978 (o)
> tbvawter@vawterlaw.com

CERTIFICATE OF SERVICE

I, Thomas B. Vawter, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing this 30th day of June, 2023.

> */s/ Thomas B. Vawter*
> Thomas B. Vawter