UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| EMIGRANT MORTGAGE COMPANY, INC., <u>et</u> <u>al.</u><br><br>Plaintiffs,<br><br>v.<br><br>DONEYN BOURKE, <u>et</u> <u>al.</u><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)     Civil Action No. 21-11133-JCB<br>)<br>)<br>)<br>)<br>)<br>) |

---

<u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>
[Docket Nos. 37, 52, 54]

January 18, 2024

Boal, M.J.

This action arises out of foreclosure proceedings with respect to property located at 6 Arkansas Avenue, Nantucket, Massachusetts (the "Property"). The parties have filed cross-motions for summary judgment. Docket Nos. 37, 52.[1] For the following reasons, I grant the Plaintiffs' motion for summary judgment and deny the Defendants' motion for summary judgment.

---

[1] On December 20, 2022, the parties consented to the jurisdiction of a magistrate judge for all purposes and, on December 28, 2022, the case was reassigned to the undersigned. <u>See</u> Docket Nos. 23-26.

I.      <u>FACTS</u>[2, 3]

Defendants Doneyn Bourke and William Hayward, Sr. became the owners in fee simple of the Property on March 2, 2006 when the Massachusetts Land Court issued Certificate of Title No. 22157 ("B&H COT").[4]  On April 17, 2008, Bourke and Hayward executed and delivered a Promissory Note in favor of plaintiff Emigrant Mortgage Company, Inc. ("Emigrant") in the amount of $950,000 (the "Note").[5]  To secure the debt evidenced by the Note, the Defendants gave a mortgage on the Property to Emigrant, dated April 17, 2008, and registered with the Nantucket County Registry District of the Land Court as Document Number 00123757, and as noted on Certificate of Title Number 22157 (the "Mortgage").[6]  The Defendants failed to make the April 1, 2009 payment and all subsequent payments due thereunder and are therefore in default of the terms of the Mortgage.[7]

---

[2] The facts are taken from the parties' Consolidated Statement of Undisputed Material Facts Relating to the Parties' Cross-Motions for Summary Judgment (Docket No. 61).  Statements of fact are referred to as "SOF" while responses are referred to as "Resp."  This Court construes the record in the light most favorable to the nonmovant and resolves all reasonable inferences in that party's favor.  <u>Baum-Holland v. Hilton El Con Management, LLC</u>, 964 F.3d 77, 87 (1st Cir. 2020) (citations omitted).

[3] Defendants have filed a motion to strike certain statements included in Plaintiffs' statements of fact on the grounds that the allegations contained in those statements are "requests for proposed rulings of law, opinions, disputed questions of fact, or misstatements of fact."  Docket No. 54 at 1.  This Court agrees with the Defendants that SOF ¶¶ 12, 13, and 23 are conclusions of law and will not consider them as facts (although this Court may have come to the same conclusion of law based on the facts properly considered).  This Court discusses the remainder of the statements in more detail in its recitation of the facts.  The motion to strike is otherwise denied.

[4] SOF ¶ 31; Resp. ¶ 31.

[5] SOF ¶ 1; Resp. ¶ 1.

[6] SOF ¶ 2; Resp. ¶ 2; <u>see also</u> Def. SOF ¶ 33; Resp. ¶ 33.

[7] SOF ¶ 3; Resp. ¶ 3.  Defendants admit that they have not made payments due under the Note and are therefore in arrears, but dispute that they have defaulted.  Def. Resp. ¶ 3.  The documents cited, however, do not support their denial.  The state court did not find that the Defendants were

As a result of the Defendants' default, on March 21, 2011, Emigrant attempted to conduct a foreclosure sale of the Property.[8]  Emigrant also claims that, on the same date, one of its agents, Dalton T. Frazier, made an open, peaceable, and unopposed entry into the Property for the purpose of foreclosing.[9]  A certificate of entry ("COE") was recorded in the Land Court on December 14, 2012.[10]  Kathryn Kiernan and Joshua D. Field signed the COE as witnesses.[11]  The notary seal on the COE indicates that Lauryn Suyematsu notarized the document on March 21, 2011 in Nantucket County.[12]  Emigrant remained in peaceable possession of the Property at all times from March 21, 2011 through December 14, 2015.[13]  There is no evidence in the record sufficient to suggest that the Defendants interrupted Emigrant's peaceable possession of the Property at any time prior to December 14, 2015.[14]

---

not in default; rather, it found that Emigrant's notice of default was deficient.  See Retained Realty, Inc. v. Bourke, 2019 Mass. App. Div. 183, at *2-3 (2019).

[8] SOF ¶ 4.  Defendants deny this fact but the evidence cited does not refute it.  Indeed, Defendants state "the Defendants admit that Emigrant attempted to foreclose the mortgage on March 21, 2011 . . .," essentially admitting this fact.  See Def. Resp. ¶ 4.

[9] SOF ¶ 36; Resp. ¶ 36.

[10] SOF ¶¶ 5, 37; Resp. ¶¶ 5, 37; Docket No. 47-1 at 40.

[11] Docket No. 47-1 at 40.

[12] SOF ¶ 52; Resp. ¶ 52; Docket No. 47-1 at 40.  Defendants point out that Ms. Suyematsu dated Mr. Field from 2005 and they married in 2012.  SOF ¶ 54; Resp. ¶ 54.

[13] SOF ¶ 10.  Contrary to Defendants' assertions, SOF ¶ 10 is not a request for a ruling of law. There is no dispute that Emigrant remained in possession of the Property through December 14, 2015.  Indeed, Defendants acknowledge that "it is true that Emigrant may have been in 'possession,' as that term has been defined in regards to foreclosures by entry."  Resp. ¶ 10.

[14] See SOF ¶ 11.

A Foreclosure Deed was registered with the Land Court on December 14, 2012 as Document Number 139303.[15]  After vetting and registering the Foreclosure Deed, the Land Court cancelled the B&H COT.[16]  The Land Court also issued a transfer Certificate of Title No. 24553, which named Plaintiff Retained Realty, Inc. ("RRI") as the fee simple owner of the Property (the "RRI COT").[17]

On March 25, 2013, RRI brought a summary process action against the Defendants.[18]  After a bench trial, judgment for RRI for possession was entered.[19]  The Defendants appealed.[20]  The foreclosure under the power of sale was declared void by the Massachusetts Appellate Division.[21]  The Appellate Division nevertheless determined that Emigrant's foreclosure by entry and possession was validly conducted and rejected the Defendants' arguments that the trial judge's findings as to the same were clearly erroneous.[22]

However, because RRI commenced the summary process action before the three-year statutory redemption period had expired, neither RRI nor Emigrant had standing to obtain

---

[15] SOF ¶ 38; Resp. ¶ 38.

[16] SOF ¶ 39; Resp. ¶ 39.

[17] SOF ¶ 41; Resp. ¶ 41.  On November 8, 2013, the Land Court amended the RRI COT to reflect the correct auctioneer, Dalton Frazier.  SOF ¶¶ 44, 45; Resp. ¶¶ 44, 45.

[18] See Bourke, 2019 Mass. App. Div. 183, at *2.

[19] Id.

[20] Id.

[21] Id. at *3.

[22] Id.  The Defendants have moved to strike SOF ¶ 18, which sets out this fact, as a "request for a ruling of law."  Docket No. 54 at 1; Resp. ¶ 18.  SOF ¶ 18, however, is not a request for a ruling of law; rather, it is an accurate recitation of the procedural history of the prior summary process action.

summary process.[23]  Accordingly, the Appellate Division vacated the Judgment of Possession

entered in the summary process action and dismissed RRI's summary process complaint.[24]  On

January 7, 2020, the Nantucket District Court entered a judgment dismissing the summary

process action in accordance with the Appellate Division's decision.[25]  On June 25, 2021, Ms.

Bourke registered a Statement of Adverse Claim with the Land Court.[26]

II.    ANALYSIS

    A.    Standard Of Review

Summary judgment is appropriate if the record, viewed in the light most favorable to the

nonmoving party "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the

moving party is entitled to a judgment as a matter of law.'"  Zabala-De Jesus v. Sanofi-Aventis

Puerto Rico, Inc., 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting Iverson v. City of Boston, 452

F.3d 94, 98 (1st Cir. 2006)).  A dispute is genuine where the evidence "is such that a reasonable

jury could resolve the point in the favor of the non-moving party."  Rivera-Rivera v. Medina &

Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted).  A material fact is one with the

"potential of changing a case's outcome."  Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st

Cir. 2018).

---

[23] Id. at * 4.  Defendants object to this statement as requesting a ruling of law, see Resp. ¶ 19, but such objection is overruled because the statement is an accurate recitation of the procedural history of the prior summary process action.

[24] Id.  Again, Defendants' objection to this statement is overruled for the same reasons stated above.

[25] SOF ¶ 21; Resp. ¶ 21.

[26] SOF ¶ 48; Resp. ¶ 48.

"To avoid 'the swing of the summary judgment scythe,' the nonmoving party must adduce specific facts showing that a trier of fact could reasonably find in his favor."  Johnson v. Johnson, 23 F.4th 136, 141 (1st Cir. 2022) (citation omitted).  "The nonmovant cannot rely on 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Id. (citation omitted).

"Cross-motions for summary judgment do not alter the basic . . . standard, but rather simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  Alasaad v. Mayorkas, 988 F.3d 8, 16 (1st Cir. 2021) (quoting Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)).

B.      This Court Has Jurisdiction Over The Plaintiffs' Claims

The Defendants challenge this Court's jurisdiction over the Plaintiffs' claims.  See Docket No. 57 at 23-30; Docket No. 65 at 3-6.  "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc., 43 F.4th 150, 162 n.8 (1st Cir. 2022) (citing Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-431 (2007)).  Therefore, I first address the Defendants' jurisdictional arguments.

1.      The Amount In Controversy Exceeds The $75,000 Threshold

Federal diversity jurisdiction is available in cases arising between citizens of different states in which the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  The Defendants do not dispute that the parties are citizens of different states.  They, however, challenge that the amount in controversy exceeds $75,000.  Docket No. 65 at 3-6.  This Court disagrees.

As the parties seeking to invoke jurisdiction, the Plaintiffs bear the burden of showing that the amount in controversy requirement has been met.  Mojtabai v. Mojtabai, 4 F.4th 77, 83-84 (1st Cir. 2021) (citing Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)).  Normally, "[t]he sum claimed by the plaintiff controls if the claim is apparently made in good faith."  Andersen v. Vagaro, Inc., 57 F.4th 11, 14-15 (1st Cir. 2023) (citing Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004)).  Once the opposing party has challenged the amount, however, the plaintiff "has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount."  Id. at 15 (citations omitted).

The amount in controversy is usually assessed from the viewpoint of the plaintiff.  CE Design Ltd. v. Am. Economy Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (citations omitted).  "As a general rule, multiple plaintiffs cannot aggregate their separate individual claims to meet the jurisdictional amount threshold."  Id. (citation omitted).  However, "where the other elements of jurisdiction are present and at least one plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  Such value "is measured . . . by the judgment's pecuniary consequences to those involved in the litigation."  Richard C. Young & Co., Ltd. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004).  In cases involving title to property, it is

well-established that the "value of the property in question would as a matter of law be included in determining the amount in controversy." McLarnon v. Deutsche Bank Nat. Trust Co., No. 15-11799-FDS, 2015 WL 4207127, at *3 (D. Mass. July 10, 2015) (citations omitted); cf. Bedard v. Mortg. Electronic Registration Sys., Inc., No. 11-cv-117-JL, 2011 WL 1792738, at *3 (D.N.H. May 11, 2011) (collecting cases) ("A number of courts have ruled that, in a case seeking equitable relief against a foreclosure sale, the fair market value of the property is an acceptable measure of the amount in controversy for purposes of diversity jurisdiction.").

Here, the Plaintiffs seek a declaration that RRI is the true and lawful owner of the Property by virtue of Emigrant's foreclosure by entry and possession. Verified Complaint ¶¶ 34-42. In addition, RRI is seeking possession of the Property. Therefore, it is appropriate to use the value of the Property as a measure of the amount in controversy. The Plaintiffs have presented evidence that the estimated fair market value of the Property is $1,850,000. SOF ¶ 27. In addition, the fact that the value of the original amount of the Mortgage was $950,000, SOF ¶ 1, also shows by a reasonable probability that the value of the Property well exceeded $75,000 at the time this action was filed. See, e.g., Barbosa v. Wells Fargo Bank, No. 12-12236-DJC, 2013 WL 4056180, at *5 (D. Mass. Aug. 13, 2013).[27]

The Defendants argue that this whole action is premised on the argument that RRI is the sole owner of the Property and Emigrant therefore has no interest in the Property. See Docket No. 65 at 4. Because Emigrant does not have an interest in the Property, Defendants continue,

---

[27] In addition, RRI seeks use and occupancy payments in the amount of at least $604,500. See Docket No. 66 at 5. The Defendants arguments regarding RRI's entitlement to use and occupancy payments, see Docket No. 65 at 5-6, go to the merits of the claim rather than the amount in controversy requirement. See, e.g., Poole v. Mazda Motor of Am., Inc., No. 8:20-cv-00466-PWG, 2021 WL 2981807, at *5 (D. Md. July 15, 2021) (court should not consider merits of a claim as part of the amount in controversy inquiry).

then Emigrant cannot meet the $75,000 jurisdictional requirement.  See id.  Even if the

Defendants were correct about Emigrant not having an interest in the Property, however, this

Court may exercise supplemental jurisdiction over the Plaintiffs' claims because RRI has met the

amount in controversy requirement.  See Allapattah Servs., Inc., 545 U.S. at 549.  Accordingly, I

find that this Court has diversity jurisdiction over this case.

       2.      M.G.L. c. 185 Does Not Deprive This Court Of Jurisdiction

Judge Gorton previously considered and rejected the Defendants' argument that Chapter

185 of the Massachusetts General Laws deprived this Court of jurisdiction over Plaintiffs'

claims.  Docket No. 11 at 7-8.[28]  Specifically, Judge Gorton found that while Chapter 185 may

restrict the jurisdiction of other state courts, it does not affect federal diversity jurisdiction.  See

id.  The Defendants now argue that while diversity jurisdiction might allow the Plaintiffs to file a

case in this Court, it does not grant this Court the right or ability to grant the specific relief

sought by the Plaintiffs.  Docket No. 57 at 22-23.  According to Defendants, the Plaintiffs seek to

have this Court amend the certificate of title to the Property, which is something only the Land

Court can do pursuant to M.G.L. c. 185, § 114.  Id. at 23.[29]

Contrary to Defendants' arguments, however, the Plaintiffs do not seek to have this Court

amend the certificate of title to the Property.  Rather, they seek a declaratory judgment that "RRI

is the true and lawful owner of the Property by virtue of Emigrant's foreclosure by entry and

possession."  Verified Complaint, Request for Relief, ¶ 1.  M.G.L. c. 185, § 114 does not

---

[28] The Defendants sought reconsideration of that finding, which this Court denied.  See Docket
No. 33 at 4.

[29] M.G.L. c. 185, § 114 provides, in relevant part, that "[n]o erasure, alteration or amendment
shall be made upon the registration book after the entry of a certificate of title or of a
memorandum thereon and the attestation of the same by the recorder or an assistant recorder,
except by order of the court."

preclude this Court from entering a declaratory judgment determining the parties' rights to the Property.  Pursuant to M.G.L. c. 185, § 91, "[a] decree of a court of competent jurisdiction affecting title or rights in registered land . . . may be registered in the same manner as a judgment at law."  As stated above, this Court has jurisdiction over Plaintiff's claims and is, therefore, a court of competent jurisdiction to declare the rights of the parties to the Property and any such declaratory judgment may be registered pursuant to Section 91.  Accordingly, this Court finds that M.G.L. c. 185, § 114 does not deprive this Court of jurisdiction over the Plaintiffs' claims in this case.

> 3.      The Plaintiffs' Claims Are Not Barred By
>         The Prior Exclusive Jurisdiction Doctrine

The Defendants also argue that the Plaintiffs' claims are barred by the prior exclusive jurisdiction doctrine.  Docket No. 57 at 24-27.  Under the prior exclusive jurisdiction doctrine, "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res."  Marshall v. Marshall, 547 U.S. 293, 311 (2006).  The doctrine applies to a federal court's jurisdiction over property "only if a state court has previously exercised jurisdiction over that same property and retains that jurisdiction in a separate, concurrent proceeding."  Barricello v. Wells Fargo Bank, N.A., No. 1:13-CV-12795-MLW, 2015 WL 13684876, at *3 (D. Mass. Mar. 16, 2015) (citations omitted).

The Defendants argue that the prior exclusive jurisdiction doctrine applies here based on their filing of a Statement of Adverse Claim on the Property.  Docket No. 57 at 27.  Pursuant to M.G.L. c. 185, § 112, the Land Court does not take action on an alleged adverse claim of title unless and until a party in interest files a motion seeking a determination as to the validity of said claim.  M.G.L. c. 185, § 112 ("[T]he court, upon the motion of any party in interest, shall grant a speedy hearing upon the validity of such adverse claim, and shall enter such judgment as justice

and equity may require.").  Here, the Defendants have not alleged or presented any evidence that they have filed such a motion in Land Court or that there is any other concurrent proceeding there.  Because there is no concurrent proceeding in state court involving the Property, the doctrine of prior exclusive jurisdiction does not apply.

       4.      <u>This Court Is Not Required To Abstain From Exercising Jurisdiction</u>

In addition, the Defendants argue that this Court should abstain from exercising jurisdiction pursuant to the doctrines identified in <u>Younger v. Harris</u>, 401 U.S. 37 (1971) and <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).  "'[B]ecause abstention runs so firmly against the jurisprudential grain," we treat abstention as 'the exception, not the rule.'"  <u>Forty Six Hundred LLC v. Cadence Education, LLC</u>, 15 F.4th 70, 74 (1st Cir. 2021) (citing <u>Chico Serv. Station, Inc. v. Sol P.R. Ltd.</u>, 633 F.3d 20, 29 (1st Cir. 2011)).

Abstention is appropriate under <u>Younger</u> "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge."  <u>Mass. Delivery Ass'n v. Coakley</u>, 671 F.3d 33, 40 (1st Cir. 2012) (quoting <u>Rossi v. Gemma</u>, 489 F.3d 26, 34-35 (1st Cir. 2007) (internal quotation marks omitted)).  The Defendants have neither asserted a federal constitutional challenge nor identified an ongoing state proceeding with which the relief requested in this case would interfere.  Accordingly, <u>Younger</u> abstention is inapplicable.

"<u>Burford</u> allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

11

Cadence Education, 15 F.4th at 75 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726-727 (1996)).  "Burford abstention applies only in 'unusual circumstances,' where the federal court risks usurping the state's role as the 'regulatory decision-making center.'"  Id. (citations omitted).

The Defendants have not identified any difficult questions of state law to be resolved by this Court or any important public considerations which would transcend the result of the claims in this case.  This case involves title to and possession of real estate property.  "[T]here [is] nothing unusual about the federal court . . . appl[ying] Masachusetts law regulating the possession of real property."  Id. at 77 (citing F.D.I.C. v. Sweeney, 136 F.3d 216, 219 (1st Cir. 1998)).  "Unlike in Burford – where the state specifically sought to develop and apply a state agency's technical expertise in evaluating complex issues of geology and economics – real property rights, though derived mainly from state law, are routinely enforced in federal as well as state courts."  Id. (internal citation omitted).  Accordingly, I find that Burford abstention is also inapplicable here.

     5.    The Rooker-Feldman Doctrine Does Not Bar Plaintiffs' Claims

Finally, the Defendants argue that the Rooker-Feldman Doctrine bars Plaintiffs' claims.  Docket No. 57 at 29-30.  This Court has previously rejected this argument, see Docket No. 33 at 5-7, and the Defendants have not raised any new arguments that would persuade this Court that its prior finding was incorrect.

     C.    Res Judicata Does Not Bar The Plaintiffs' Claims

The Defendants argue that the Plaintiffs' claims are barred by the doctrine of res judicata.  Docket No. 57 at 23-24.[30]  Judge Gorton previously rejected this argument in connection with

---

[30] The Defendants include their discussion of res judicata as part of their jurisdictional

the Defendants' motion to dismiss.  See Docket No. 11 at 9-11.  The Defendants argue, however,

that, in deciding this issue, Judge Gorton "was apparently unaware of the fact that final judgment

had already determined that RRI had no interest in Ms. Bourke's home and was not entitled to

possession of the property, or to use and occupancy payments."  Docket No. 57 at 23.  Contrary

to Defendants' statements, however, the judgment entered by the Nantucket District Court did

not determine that RRI has no interest in the Property or that the Defendants are in lawful

possession of the Property.  Rather, the judgment was entered in accordance with the Appellate

Division's determination that RRI lacked standing to obtain summary process at that time

because it had commenced that action before the Defendants' equity of redemption had been

extinguished.  See Docket No. 55-13; Bourke, 2019 Mass. App. Div. 183, at * 4.  The Appellate

Division's decision did not preclude renewal of RRI's claims in a subsequent action once

standing had been obtained.[31]  Accordingly, I find that res judicata does not bar the Plaintiffs'

claims.

> D.      The Plaintiffs Are Entitled To A Declaratory Judgment
>         That RRI Is The True And Lawful Owner Of The Property

> 1.      Emigrant Foreclosed On The Property By Entry And Possession

The Plaintiffs argue that RRI is the true owner of the Property by virtue of Emigrant's

foreclosure of the Mortgage by entry and possession.  Docket No. 45 at 3-11.  "In Massachusetts,

a mortgagee who makes a peaceable entry, records a certificate of entry, and retains possession

for three years, extinguishes the mortgagor's right of redemption."  Wornat Dev. Corp. v.

---

arguments, but "the doctrine of res judicata or issue preclusion in no way implicates
jurisdiction."  Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) (citations
omitted).

[31] For that reason, the Defendants' argument that the Plaintiffs lack standing to bring this action
based on the judgment entered in the state court, see Docket No. 57 at 19, has no merit.

Vakalis, 403 Mass. 340, 345-346 (1988) (citing M.G.L. c. 244, §§ 1, 2).  Once entry is made, a memorandum of the entry must be made on the mortgage deed and signed by the mortgagor or person claiming under him, or a certificate must be made under oath by two competent witnesses to prove the entry.  M.G.L. c. 244, § 2.  The three-year holding period begins to run when the mortgagee records a proper memorandum or certificate of entry.  Santiago v. Alba Mgmt., 77 Mass. App. Ct. 46, 50 (2010) (citing M.G.L. c. 244, § 1).  "[O]nce a foreclosure after peaceable entry has occurred . . . the mortgagee owns both legal and equitable title to the land."  Id. at 52.

The record before this Court shows that, on or about March 21, 2011, Emigrant made open and peaceable entry upon the Property.  See SOF ¶ 5; Docket No. 47-1 at 40-42; see also Bourke, 2019 Mass. App. Div. at *3.  On March 21, 2011, the COE was prepared to memorialize Emigrant's open and peaceable entry and was recorded on December 14, 2012, which started the clock on the three years of possession required to foreclose the Defendants' right of redemption. See id.  Nevertheless, the Defendants contest that entry was actually made.  See SOF ¶¶ 52-71; Docket No. 57 at 4-5.

As evidence that the entry was made, Emigrant recorded the COE, which stated that Dalton T. Frazier, an agent of Emigrant, made an open, peaceable, and unopposed entry upon the Property on March 21, 2011.  Docket No. 47-1 at 40.  Two witnesses signed the COE: Kathryn Kiernan and Joshua D. Field.  Id.  In addition, the COE contains a certification by Lauryn Suyematsu, a notary public, certifying that:

> Then personally appeared the above named Kathryn Kiernan and Joshua Field, who proved to me through satisfactory evidence of identification, which was [x] personal knowledge or [] _____, to be the parties whose names are signed on the proceeding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of their knowledge.

Id. at 41.  Despite this evidence, the Defendants claim that the COE "is at best highly dubious

and more likely intentionally false."  Docket No. 57 at 4.  As support for this position, the

Defendants note, among other things, that Mr. Field was in dating relationship with Ms.

Suyematsu; he testified that he has no memory or knowledge if he has ever been to Nantucket;

does not recognize or remember the COE; and does not know Mr. Frazier or Ms. Kiernan.  Id. at

4.  They also state that Ms. Kiernan does not recall appearing before a notary public; does not

know Ms. Suyematsu; and that Ms. Suyematsu does not recall the COE and has no memory of

Ms. Kiernan.  Id. at 4-5.  These statements are insufficient to challenge that the entry in fact

occurred.

In light of the notarized COE, none of the cited testimony shows anything other than that

the witnesses do not recall the entry given the passage of time.  "The notary's certificate is proof

presumptively of a valid acknowledgment."  Hale v. Hale, 332 Mass. 329, 333 (1955); see also

Barron v. United States, 5 F.2d 799, 804 (1st Cir. 1925) ("[T]he notary a public official,

authorized by law to administer such oath, it will be presumed, in the absence to evidence to the

contrary, that he correctly discharged his duty, and that his certificate states the truth."); Fed. R.

Evid. 902(8) ("A document accompanied by a certificate of acknowledgment that is lawfully

executed by a notary public" is self-authenticating).  "The legal presumption of the proper

performance of official duty by a public officer requires that this effect should be given it."

Iantosca v. Iantosca, 324 Mass. 316, 321-322 (1949).  The party challenging this presumption

bears the burden of rebutting it by clear and convincing evidence.  See McNeff v. Cerretani, No.

16 MISC 000327 (KFS), 2018 WL 4382980, at *6 (Mass. Land Court Sept. 12, 2018).

Here, the Defendants point to the fact that none of the parties involved in the COE,

including the notary, have any recollection about the circumstances leading to the execution of

the COE.  See Docket No. 57 at 4-5.  As noted by the Seventh Circuit, however:

> [O]nly a rare individual can remember every person with whom the individual has a brief encounter. Indeed, that is the basic reason for recognizing a presumption of validity for a notary's certificate in the first place. If a notary's certificate were vulnerable to attack every time an interested witness contradicted the certificate and the notary did not have a personal recollection of the event, 'it would shock the moral sense of the community, deny justice, and create chaos I land titles[]' and every other type of document requiring notarization.

Butler v. Encyclopedia Brittanica, Inc., 41 F.3d 285, 295 (7th Cir. 1994) (citation omitted); see also Hale, 332 Mass. at 334 ("There would be little security in conveyances of real estate if a certificate of acknowledgment could be set at naught by such evidence fourteen years later."). Based on the record before this Court, the Defendants have not presented sufficient evidence to rebut the presumption that the notary certificate is accurate. Therefore, they have not raised a triable issue of fact regarding entry upon the Property by Emigrant.

"If the mortgagor wants to challenge a foreclosure by entry, it is incumbent on him to do so before the three-year period has elapsed." Singh v. 207-211 Main Street, LLC, 78 Mass. App. Ct. 901, 902 (2010) (citing Bennett v. Conant, 64 Mass. 163, 166-167 (1852)). Here, there is no dispute that the Defendants did not challenge the foreclosure by entry within three years of the recording of the COE. To the extent that the Defendants rely on their Statement of Adverse Claim as a sufficient challenge to the foreclosure by entry, see SOF ¶ 48, such statement was not recorded until June 25, 2021, well after three years from the recording of the COE. Therefore, the Defendants' Statement of Adverse Claim cannot overcome Emigrant's foreclosure by entry.

2.    The Foreclosure Deed Did Not Terminate The COE

The Defendants argue that "[b]y operation of law, the Land Court's registration of the Foreclosure Deed terminated the COE and the Emigrant mortgage." Docket No. 57 at 15; see also id. at 20 ("Emigrant's entry ended immediately upon the registration of the Foreclosure Deed and cannot be revived."). In so arguing, the Defendants rely on M.G.L. c. 185, § 46, which

16

provides, in relevant part that "[e]very plaintiff receiving a certificate of title in pursuance of a judgment of registration, and every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate . . ."  M.G.L. c. 185, § 46.

It appears[32] that the Defendants are arguing that because the Foreclosure Deed and the RRI COT make no mention of the COE, then RRI did not take the Property subject to the COE.  See Docket No. 57 at 20-21.  The purpose of Section 46, however, "is to protect the transferee of a registered title," Doyle v. Commonwealth, 444 Mass. 686, 690 (2005) (citations omitted), which in this case was RRI.  Therefore, the Defendants may not benefit from the provisions of M.G.L. c. 185, § 46 to avoid the effect of the COE.

Accordingly, this Court finds that Emigrant properly foreclosed on the Property by entry and possession and the Defendants' right of redemption was extinguished on December 14, 2015, three years after the recording of the COE.

3.   Under The Doctrine Of Estoppel By Deed, RRI Is The Owner Of
     The Property Following Emigrant's Foreclosure By Entry And Possession

"Estoppel by deed occurs when . . . a grantor conveys property by deed which, unknown

---

[32] This argument is convoluted and, other than a cite to the statute, Defendants do not cite to any relevant precedent interpreting the statute in this manner.  Indeed, the Defendants' argument defies logic.  The Defendants appear to argue that the Foreclosure Deed was effective to convey title to the Property to RRI at the time the Foreclosure Deed was registered.  However, the Appellate Division determined that Emigrant's foreclosure by exercise of the power of sale from which the Foreclosure Deed was derived was void.  See Bourke, 2019 Mass. App. Div. 183, at *3.  "[T]here is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect."  Bevilacqua v. Rodriguez, 460 Mass. 762, 771 (2011) (citation omitted).  While "[r]ecording may be necessary to place the world on notice of certain transactions," it "is not sufficient in and of itself, however, to render an invalid document legally significant."  Id. (citations omitted).  Because Emigrant's foreclosure by exercise of the power of sale was void, the Foreclosure Deed was ineffective as a conveyance of title at the time it was registered.

to the grantee, the grantor does not own at the time of conveyance, but which the grantor later acquires.  In such a case, the grantor (and anyone claiming under him) is estopped from asserting against the grantee a claim of title to the property conveyed." <u>Mackey v. Santander Bank, N.A.</u>, 98 Mass. App. Ct. 431, 433 (2020) (quoting <u>Dalessio v. Baggia</u>, 57 Mass. App. Ct. 468, 469-470 (2003)).  Here, it is undisputed that Emigrant registered a Foreclosure Deed conveying the Property to RRI on December 14, 2012 pursuant to its attempt to foreclose the Mortgage under the statutory power of sale.  SOF ¶¶ 7, 38; Resp. ¶¶ 7, 38.  Although the Appellate Division determined that the foreclosure sale was void, once the Defendants' equity of redemption was extinguished due to Emigrant's foreclosure by entry and possession, Emigrant obtained title to the Property.  Under the doctrine of estoppel by deed, the Foreclosure Deed was sufficient to convey title to RRI upon the expiration of the statutory redemption period.  <u>See</u>, <u>e.g.</u>, <u>Daukas v. Dadoun</u>, No. 13 MISC. 479718(KCL), 2014 WL 3659395, at *2 (Mass. Land Ct. July 23, 2014). Therefore, the Plaintiffs are entitled to a declaratory judgment that RRI is the true and lawful owner of the Property.  Accordingly, this Court grants summary judgment in favor of the Plaintiffs on Count I of the Complaint.

      E.    <u>RRI Is Entitled To Possession</u>

RRI seeks summary judgment on its claim for possession of the Property.  As discussed above, the record establishes that Emigrant properly foreclosed on the Property via a foreclosure by entry, that the Defendants' right of redemption was extinguished as of December 14, 2015, and that RRI is the owner of the property under the doctrine of estoppel by deed.  Therefore, RRI has made a showing that it is entitled to possession of the Property.  <u>See</u>, <u>e.g.</u>, <u>Sampson v. U.S. Bank, Nat'l Ass'n</u>, __ F.Supp.3d __, 2023 WL 6050356, at *5 (D. Mass. Sept. 15, 2023).

The Defendants argue that Massachusetts law does not recognize a claim for possession and that the Plaintiffs are required to seek possession in state court pursuant to the summary process procedure established by M.G.L. c. 239, § 1.  Docket No. 65 at 10-11.  However, summary process "is not the exclusive means by which a foreclosing entity make seek possession of real property in Massachusetts."  Serra v. Quantum Serv., Corp., 747 F.3d 37, 43 (1st Cir. 2014) (citing M.G.L. c. 184, § 18).  As discussed above, the Plaintiffs have shown that RRI is entitled to possession of the Property.

The Defendants also argue that the final judgment entered in state court determined that they were in lawful possession of the Property.  Docket No. 65 at 10.  Again, this is incorrect.  The state action did not in fact adjudicate title to the Property.  Rather, the Massachusetts Appellate Division found that RRI lacked standing to bring the summary process action because it was filed prior to the expiration of the redemption period.  Bourke, 2019 Mass. App. Div. 183, at *4.  The final judgment entered in accordance with that decision did not foreclose RRI from filing an action to recover possession of the Property after expiration of the redemption period, which is what it has done in this case.

F.     RRI Is Entitled To Use And Occupancy

Under Massachusetts law, a "tenant at sufferance is liable for the reasonable worth of its use and occupancy and/or detention of the premises."  Dale v. H.B. Smith Co., Inc., 136 F.3d 843, 850 (1st Cir. 1998) (citing M.G.L. c. 186, § 3; Lowell Hous. Auth. v. Save-Mor Furniture Stores, Inc., 346 Mass. 426, 430-431 (1963)).  "After a foreclosure, the mortgagor becomes a tenant at sufferance of the mortgagee."  Santander Bank, N.A. v. O'Connor, 2015 Mass. App. Div. 185, 2015 WL 9597921, at *2 (Mass. App. Div. Dec. 10, 2015).  Accordingly, the

Defendants are tenants at sufferance and are obligated to compensate RRI for their continued use and occupancy of the Property after the foreclosure.

The Defendants owe RRI the "fair rental value of the premises." <u>Davis v. Comerford</u>, 483 Mass. 164, 170 (2019) (citations omitted).  RRI has presented evidence that the estimated fair market rental value of the Property is between $6,500 and $7,500 per month.  <u>See</u> Docket No. 47-1 at 65.  The Defendants have not presented any evidence to dispute that assertion. Accordingly, I find that RRI is entitled to use and occupancy in the amount of $6,500 per month from March 21, 2011 to the date that the Defendants vacate the Property.

G.      The Plaintiffs Are Entitled To Summary Judgment
        On Their Favor On The Defendants' Counterclaims

The Defendants bring counterclaims under Chapter 93A of the Massachusetts General Laws, for abuse of process, and for intentional infliction of emotional distress.  The Defendants base all three claims on the Plaintiffs' initiation of this action.  <u>See</u> Docket No. 57 at 11 ("There can be little question that utilizing the legal system to attempt to steal the legal title to the property" is a violation of Chapter 93A.); 12 ("A complaint that is filed with actual knowledge the averments in the complaint are alternative facts that in reality are false or misleading is an abuse of process."); 13 (claiming that Plaintiffs "filed this suit seeking to undue the previous eleven years of litigation; with a complaint that seeks to have this court allow them to steal Ms. Bourke's home.").  Once again, these arguments are based on a mischaracterization of the Appellate Division's decision in <u>Bourke</u> and the final judgment entered by the Nantucket District Court upon remand.  This Court has already rejected such arguments and found that the Plaintiffs have shown that RRI is the lawful owner of the Property.  Accordingly, I find that the Plaintiffs are entitled to judgment in their favor on all of the Defendants' counterclaims.

III.   <u>ORDER</u>

For the foregoing reasons, I grant the Plaintiffs' motion for summary judgment and deny the Defendants' motion for summary judgment.  Within two weeks, the parties shall file, jointly if possible, and separately if necessary, a proposed judgment.

 /s/ Jennifer C. Boal
JENNIFER C. BOAL
U.S. MAGISTRATE JUDGE
